NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 190869-U

NOS. 4-19-0869, 4-19-0870 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 17, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* M.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Logan County |
| Petitioner-Appellee, | ) | Nos. 18JA43 |
| v.   (No. 4-19-0869) | ) | 18JA44 |
| Ami F., | ) | |
| Respondent-Appellant). | ) | |
| | ) | |
| | ) | |
| *In re* A.H., a Minor | ) | |
| | ) | |
| (The People of the State of Illinois, | ) | |
| Petitioner-Appellee, | ) | |
| v.   (No. 4-19-0870) | ) | Honorable |
| Ami F., | ) | William G. Workman, |
| Respondent-Appellant). | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed the judgments of the trial court that terminated respondent's parental rights because the trial court's findings were not against the manifest weight of the evidence.

¶ 2   Respondent, Ami F., is the mother of M.H. (born July 2012) and A.H. (born June 2015). In October 2018, the State filed separate petitions for adjudication of wardship, alleging that the minors were neglected. Respondent stipulated the minors were neglected.

¶ 3   In October 2019, the State filed petitions to terminate respondent's parental rights

in each case. The petitions alleged, in part, that respondent was an unfit parent because she was depraved.

¶ 4        In December 2019, the trial court conducted the fitness portion of the termination hearing at which the State presented evidence that respondent had been convicted of four felonies. Respondent presented no evidence, and following arguments, the trial court found that respondent was depraved.

¶ 5        Immediately following the fitness proceedings, the trial court conducted a hearing regarding whether it was in the minor children's best interests to terminate respondent's parental rights. Both sides presented evidence, and following arguments, the trial court found that it was in the minors' best interests that respondent's parental rights be terminated.

¶ 6        Respondent appeals, arguing that the trial court's (1) fitness determinations and (2) best-interest determinations in each case were against the manifest weight of the evidence. We disagree and affirm the court's judgments.

¶ 7                              I. BACKGROUND

¶ 8                              A. Procedural History

¶ 9        In October 2018, the State filed separate petitions for adjudication of wardship, alleging, in relevant part, that M.H. and A.H. were neglected minors as defined by the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2016)) in that their environment was injurious to their welfare due to respondent's (1) illegal substance abuse and (2) unresolved domestic abuse issues. On the same day the petition was filed, the trial court conducted a shelter care hearing and placed temporary custody and guardianship with the guardianship administrator of the Department of Children and Family Services (DCFS).

¶ 10       In November 2018, the trial court conducted an adjudicatory hearing at which the

parties appeared with counsel. Respondent stipulated to the allegation that she had unresolved substance abuse issues. The trial court entered an adjudicatory order finding that M.H. and A.H. were neglected minors and set a dispositional hearing for the following month.

¶ 11 Later that month, the trial court conducted a dispositional hearing. The dispositional order stated that respondent was unfit due to her current incarceration awaiting trial and that she needed to complete services for mental health, substance abuse, domestic violence, and parenting. The court entered an order finding it was in the best interest of M.H., A.H., and the public that they be made wards of the court and adjudicated neglected minors. The court further found respondent unfit and unable for reasons other than financial circumstances alone to care for, protect, train, educate, supervise, or discipline the minors, and it would be contrary to the minors' health, safety, and best interest to be in her custody. The court placed guardianship and custody with the guardianship administrator of DCFS.

¶ 12 B. The Termination Hearings

¶ 13 In October 2019, the State filed a petition to terminate respondent's parental rights. The petition alleged that respondent was an unfit parent because she (1) was depraved, (2) failed to make reasonable progress within the nine-month period from November 2018 to October 2019, and (3) failed to make reasonable efforts to correct the conditions that were the basis for removing the minors from her care during that same nine-month period. 750 ILCS 50/1(D)(i), (m) (West 2016).

¶ 14 1. *The Fitness Proceedings*

¶ 15 In December 2019, the trial court conducted the fitness portion of the termination hearing to address respondent's parental fitness. The State began the hearing by dismissing the allegations related to reasonable progress and reasonable efforts. During the hearing the State

presented certified copies of respondent's four felony convictions, one for domestic battery and three for aggravated battery to a peace officer. After the State rested, respondent presented no evidence.

¶ 16 The State argued that the convictions created a rebuttable presumption that respondent was depraved. Respondent argued that the State introduced no evidence that the children suffered any negative impact because of the convictions. The trial court found that the State proved by clear and convincing evidence that respondent was depraved. Accordingly, the court found respondent was an unfit parent.

¶ 17 2. *The Best Interest Proceedings*

¶ 18 Immediately following the fitness proceedings, the trial court conducted a hearing regarding whether it was in the minors' best interests to terminate respondent's parental rights.

¶ 19 Tiffany Sisk testified that she had been the caseworker for the children since December 2018. Sisk said that respondent was arrested in January 2019, March 2019, and June 2019. Sisk said that when respondent was not incarcerated, she attended one parenting class and one mental health class.

¶ 20 Sisk testified that the minors were living with their paternal grandfather and his wife. Sisk said that they are willing to adopt the minors. Sisk explained that the minors showed affection towards their caregivers and described that based on her observations "they are just a very tight, close family." Sisk said that both children were performing well in school. Sisk stated that respondent's projected release from prison was in November 2021.

¶ 21 Sisk stated that the minors spent the night at their older sister's house once a month. Sisk stated the minors had an ongoing relationship with respondent.

¶ 22 Respondent testified that she was incarcerated and that when she was at the

county jail, she did not have any services available for her to complete. Respondent said she planned to enroll in services after she was transferred to prison. Respondent said she did not have any contact with her children but that she wanted contact. She further testified that although her release date was in November 2021, she anticipated she would be released earlier. She planned to participate in an alcohol addiction program upon her release.

¶ 23　　　　The State argued that respondent had convictions for three violent felonies, and that the children were taken into protective custody "after a violent interaction between [respondent] and [the] father in which when taken judicial notice [*sic*] it was quite terrible injuries. The minors were present when this happened." The State detailed respondent's periods of incarceration, as well as her access to, and failure to complete, services. The State further stated that the children "deserve permanency. They deserve to have a good, stable living environment." The State noted that the placement was with a relative. The State argued that for these reasons it was in the best interests of the children that respondent's parental rights be terminated. Respondent argued that guardianship was a better option and her rights should not be terminated.

¶ 24　　　　The trial court found that "the children are in a better place at this point. They are in an environment that is nurturing. They are in an environment where the caretakers are obviously loving them." The court described the children as "thriving" in their current environment. The court noted that M.H. had improved school attendance. The court contrasted the current environment with the one with respondent "where there was [*sic*] a lot of domestic issues." The court noted that the children "were present during the time these offenses were occurring." The court concluded that it was in the best interests of the children that respondent's parental rights be terminated.

¶ 25    Following the termination of respondent's parental rights in both cases, respondent appealed, and this court consolidated the cases on appeal for consideration.

¶ 26                                II. ANALYSIS

¶ 27    On appeal, respondent argues that the trial court's (1) fitness determinations and (2) best-interest determinations in each case were against the manifest weight of the evidence. We disagree and affirm the trial court's judgments.

¶ 28                        A. The Fitness Determinations

¶ 29                        1. *The Standard of Review*

¶ 30    A determination of parental unfitness involves factual findings and credibility determinations that the trial court is in the best position to make. *In re Richard H.*, 376 Ill. App. 3d 162, 165, 875 N.E.2d 1198, 1201 (2007). A trial court's finding of parental unfitness will not be reversed unless it is against the manifest weight of the evidence. *In re D.D.*, 196 Ill. 2d 405, 417, 752 N.E.2d 1112, 1119 (2001). A decision is against the manifest weight of the evidence when the opposite conclusion is clearly the proper result. *In re Nylani M.*, 2016 IL App (1st) 152262, ¶ 48, 51 N.E.3d 1067.

¶ 31                                2. *Depravity*

¶ 32    The State must prove unfitness as defined in section 1(D) of the Adoption Act by clear and convincing evidence. 750 ILCS 50/1(D) (West 2016). Grounds for unfitness include depravity. *Id.* Section 1(D)(i) of the Adoption Act states that "[t]here is a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least 3 felonies under the laws of this State or any other state *** and at least one of these convictions took place within 5 years of the filing of the petition or motion seeking termination of parental rights." *Id.* § 1(D)(i) (West 2016).

¶ 33                    3. *The Trial Court's Finding in This Case*

¶ 34        Here, respondent concedes that the State has presented sufficient evidence to create the rebuttable presumption of depravity but argues that because there is an absence of evidence that the convictions harmed the children, the trial court should not have found her unfit. Respondent presented no evidence at the fitness hearing to rebut the presumption of depravity. The evidence in favor of a finding of unfitness was so strong as to be presumptive. The evidence against that finding was, conversely, nonexistent. Under these circumstances, we cannot conclude that the trial court's finding was against the manifest weight of the evidence.

¶ 35                B. The Best-Interests Determinations

¶ 36                1. *The Applicable Law and Standard of Review*

¶ 37        At the best-interests stage of a termination proceeding, the State bears the burden of proving by a preponderance of the evidence that termination of parental rights is in the child's best interest. *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071, 918 N.E.2d 284, 290-91 (2009). In reaching a best-interest determination, the trial court must consider, within the context of the child's age and developmental needs, the following factors:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the

person available to care for the child." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072, 859 N.E.2d 123, 141 (2006); see also 705 ILCS 405/1-3(4.05) (West 2016).

¶ 38　　　　　A reviewing court affords great deference to a trial court's best-interest finding because the trial court is in the superior position to view the witnesses and judge their credibility. *Jay. H.*, 395 Ill. App. 3d at 1070. An appellate court "will not reverse the trial court's best-interest determination unless it was against the manifest weight of the evidence." *Id.* at 1071. A best-interest determination is against the manifest weight of the evidence only if the facts clearly demonstrate that the trial court should have reached the opposite result. *Id.*

¶ 39　　　　　　　　　　　　　　2. *This Case*

¶ 40　　　　　In both cases, the trial court emphasized that the children are now in a nurturing environment and appear to be thriving. The court noted that for M.H., her school attendance improved and her grades increased. The court contrasted this with her prior environment with respondent where there were domestic issues including domestic violence to the father of the children while the children were present. The court concluded it was in the children's best interests to remove them from that environment and put them in one in which they would have permanency.

¶ 41　　　　　A trial court need not explicitly state each factor when rendering its decision. *In re Deandre D.*, 405 Ill. App. 3d 945, 954-55, 940 N.E.2d 246, 254-55 (2010). Here, the court discussed information relevant to the children's safety and welfare, the children's development, the continuity of affection and security, and the children's need for permanence. We note that the evidence related to the safety of the children was particularly strong, but the court's emphasis on this factor does not indicate that the court failed to properly consider the remaining factors.

¶ 42　　　　　Accordingly, we conclude the trial court's finding that it was in the minor

children's best interests to terminate respondent's parental rights in each case were not against the manifest weight of the evidence.

¶ 43                                   III. CONCLUSION

¶ 44            For the reasons stated, we affirm the trial court's judgments.

¶ 45            Affirmed.